# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE  DIVISION

Thompson, et al                                                Civil Action No. 15-02288

versus                                                            Judge Rebecca F. Doherty

Ackal, et al                                            Magistrate Judge Carol B. Whitehurst


## REPORT AND RECOMMENDATION

Currently pending is a Motion to Dismiss the Claims Of Plaintiff Pursuant To Rule 12(b)(6) filed by defendant, Iberia Parish Government ("Iberia Parish"), [Rec. Doc. 21], a Response In Opposition filed by Tyree Thompson, the Administrator on behalf of Yulanda Thompson Succession ("Plaintiff"),[1] [Rec. Doc 25], and Iberia Parish's Reply thereto [Rec. Doc. 30]. The motion was referred to the undersigned for ruling.  For the following reasons, the motion will be denied.

### I.  Factual Background

This action was brought by Plaintiff under 42 U.S.C. § 1983, the American With Disabilities Act ("ADA) and Section 504 of the Rehabilitation act, and state law, for the death of her son, Daquentin Thompson ("Daquentin"), while he was in custody at the Iberia Parish Jail ("Iberia Jail"). The factual allegations in Plaintiffs' Complaint are as follows:

Plaintiff alleges, on August 1, 2014, her sixteen year old son, Daquentin Thompson,

---

[1] Yolanda Thompson, mother of Daquentin Thompson, filed this action on August 26, 2015. Following her death, Tyree Thompson, her son and administrator of her estate, was substituted as party plaintiff by order entered December 18, 2015. *R. 35.*

was seen by his primary care physician at Pediatric Group of Acadiana, who noted that Daquentin was doing well on a combination of Adderall, Vyanase and Vistaril. In August 2014, Daquentin was arrested on charges of aggravated rape of a thirty-six year old woman and transported to the Assumption Parish Youth Detention Center ("Youth Center"). On September 1, 2014, Daquentin attempted suicide by tearing his blanket and wrapping it around his neck. The medical staff at the Youth Center placed Daquentin on suicide watch—"1 on 1 Observation"—for two days

Following indictment, Daquentin was transferred for housing at the Iberia Jail as a pre-trial detainee on September 11, 2014. Upon admission to the Iberia Jail, a screening officer from Emerald Healthcare Systems ("Emerald") performed the medical portion of the Intake Screening. Emerald was contracted by Iberia Parish to provide adequate medical and mental health care to the inmates at the Iberia Parish Jail. The screening officer did not record that Daquentin had been transferred from the Youth Center or that he had been on suicide watch. Instead, only Daquentin's diagnosis for ADHD and his prescription for Vistaril were recorded. Also, the screening officer designated on the "Intake Booking Division Health Screening Form" that Daquentin's housing disposition was "general population" rather than special housing for a sixteen year old. Ultimately, none of his records were requested from the Youth Center and he was housed in the adult "general population" on a lock-down tier known as "J-Pod" in which the prisoners were locked in their cells at least 23 hours/day.  Plaintiff alleges, on information and belief, "the tier is painted bright pink, and J-Pod prisoners are assigned a

hot pink jump suit and bedding as a means of punishment;" and houses "a mix of people including those who had committed both serious and minor infractions of the jail's rules, those who could not be housed elsewhere, and those who were most likely to be targets of physical and sexual violence were all housed together." *R. ¶¶ 30, 31.*

The following day, a medical intake summary using Emerald Healthcare System's "Treatment Plan, Special Needs and Restrictions" form was performed by a nurse. Daquentin was not marked as an "Adolescent in Adult Facility" on the form, and the signed authorization to release his medical records was never sent to other his medical and mental healthcare providers (the Youth Center or Pediatric Group of Acadiana), so none of his medical records were obtained. While Dr. Bujard, Iberia Jail Medical Director, continued Daquentin's prescription for Vistaril by telephone, Dr. Bujard never personally evaluated Daquentin. Nor did a psychiatrist or any other mental health professional ever evaluate Daquentin regarding his attempted suicide nor whether Vistaril was adequate treatment.

According to reports dated October 21 and 23, 2014, Daquentin told Nurse Fontenot, a nurse employed by Emerald, he wanted to kill himself. Nurse Fontenot did not refer Daquentin to an appropriate mental health provider in either instance, but instead told various officers at the jail who were not trained in mental health issues about the suicide threats. No action was taken in either instance as Daquentin was found to be "just joking." Daquentin was found hanging in his cell on October 26, 2014 at approximately 12:30 a.m. He was declared dead at Iberia Parish Medical Center at 1:25 a.m.

Plaintiff alleges the actions by all defendants were "reckless, willful, wanton, and malicious, and constituted deliberate indifference. Plaintiff alleges the following constitutional violations against Iberia Parish: (1) "Count 1" for establishing "a system in which inmates with serious mental health issues are denied access to appropriate medical care;" "Count 5" for violation of the ADA and Section 504 of the Rehabilitation Act by establishing a system that discriminated against and failed to accommodate a disability;" and, "Count 7" for establishing "policies, patterns or practices pursuant to which inmates with serious mental health conditions are denied access to appropriate medical care."

Plaintiff alleges he is entitled to relief against Iberia Parish because they had notice of Daquentin's disability and were aware that Iberia Jail and Emerald would fail to treat it and that the Iberia Parish Sheriff's Office would fail to make reasonable accommodation of Daquentin's disability. *Id. at § 62.* In particular, Plaintiff alleges that Iberia Parish violated Daquentin's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 by contracting with Emerald for inadequate and insufficient services for medical and mental healthcare for prisoners/detainees with serious medical conditions such as serious mental health disorders, and by establishing and maintaining policies, patterns or practices they knew would deprive inmates with serious medical conditions (such as serious mental health disorders) or treatment for those disorders. *Id. at §§ 52, 73.*

4

Iberia Parish now moves to dismiss Plaintiff's claims against it on the basis that it had no responsibility for the treatment of Daquentin as alleged in the Complaint.

## II.  Motion To Dismiss Standard

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) . However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Collins*, 224 F.3d at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id. at 555,* and "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," *Id.* "While a complaint ... does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009).

*III. Analysis*

Iberia Parish's motion to dismiss is based solely on its argument that because the parish is only charged with the parish jail's financing and physical maintenance and is not responsible for its operation, it could not be liable for an inmate's death resulting from hanging himself. While Iberia Parish cites, *intra alia,* La. R.S. § 15:702, "Maintenance of parish jails," in support of its position, it argues in its reply brief that Plaintiff's reliance on La. R.S. § 15:703 constitutes a "new cause of action." *R. 30.* To the extent the Court "entertains this new cause of action," Iberia Parish further argues that such action should be dismissed because the parish

fulfilled its obligations under La. R.S. §15:703—to enter into a contract with a health care provider and to provide requisite health care services. Finally, Iberia Parish contends that Plaintiff's allegations suggest a claim for negligent negotiation of a contract which does not give rise to a constitutional violation under 42 U.S.C. § 1983.

Plaintiff opposes Iberia Parish's motion arguing that, while faulty operations are partly to blame for Daquentin's death, Iberia Parish is to blame because they failed to uphold their duty as required under La. R.S. § 15:703 (A,B,D). Plaintiff contends, "The Parish negotiated a patently inadequate, cut rate contract with defendant Emerald Healthcare Systems for medical care at the jail ... [which] resulted in a 17-year old boy with active suicidal ideation and a well documented history of mental illness being deprived of mental health treatment...."[2] Louisiana law requires the parish governing authority to provide "a good and sufficient jail." La. R.S. 33:4715. Also, although it is the sheriff and not the municipality that has the duty to provide day-to-day medical care of the prisoners, the municipality is responsible for the annual appointment of a licensed physician or  a qualified "health care provider" who shall attend the prisoners whenever they are sick. His salary shall be fixed by the governing authority. *See Amiss v. Dumas*, 411 So.2d 1137, 1140 (La.App. 1st Cir.1982) (quoting La.Rev.Stat.Ann. § 15:703).

Section 15:703, as amended effective June 27, 2003, provides in pertinent part:

---

[2]  On January 25, 2016, Plaintiff amended her complaint to attach the contract between Emerald Healthcare Systems, LLC, Iberia Parish Government, and Iberia Parish Sheriff. [Rec. Doc. 51]

A. The governing authority of each parish shall appoint annually a physician who shall attend the prisoners who are confined in parish jails whenever they are sick....

B. In lieu of appointing a physician, the governing authority of any parish may enter into a contract with a health care provider, licensed or regulated by the laws of this state, to provide requisite health care services, as required in this Section....

. . .

D. The sole responsibility of the governing authority of each parish which is mandated by the provisions of this Section with respect to providing health care services for prisoners shall be the appointment of a physician .... The parish and its governing authority shall not be liable for any action arising as a result of the actions or inactions of the physician or health care provider.... including those for the death of the prisoner, <u>unless the governing authority exercises gross negligence or willful misconduct in the performance of its duties and obligations imposed by this Section, and such gross negligence or willful misconduct was a substantial factor in causing the injury</u>.

La. R.S. § 15:703 (emphasis supplied).

A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir.2000). Thus, rather than a negligence claim, Plaintiff claims that Iberia Parish's contract with the Healthcare provider for the Iberia Jail, pursuant to its duty under §15:703, was inadequate to provide for the necessary mental health services, and therefore constituted a constitutional violation of Daquentin's right to adequate mental treatment and deliberate indifference to his mental health needs which directly resulted in his suicide.

In the Complaint, Plaintiff alleged that Iberia Parish failed to contract for constitutionally adequate healthcare services:

8

[Iberia Parish] violated Daquentin's constitutional rights] by contracting with Emerald Healthcare Systems for inadequate and insufficient services for medical and mental health care for prisoners with serious medical conditions, namely, serious mental health disorders. *R. 1,* ¶ 52.

Specifically, [Iberia Parish] entered into a contract and operated the Iberia Parish Jail whereby inmates with serious mental health needs, like Daquentin, were deprived of appropriate mental health treatment. *Id.* at ¶ 62.

[The Parish violated the plaintiff's rights by] establishing and maintaining policies, patterns or practices that they knew would deprive inmates with serious medical conditions, namely, serious mental health disorders, of treatment for those disorders. *Id. at ¶ 73.*

Plaintiff further alleged that Daquentin spent over a month at the Iberia Parish Jail and was never evaluated by a mental health worker despite his diagnosed mental illness and repeated threats of suicide. *R. 1 at ¶¶ 1, 28, 39 - 41.* Also, instead of being referred to a qualified mental health worker when he expressed suicidal thoughts to the nurse at the jail, Plaintiff alleged Daquentin was referred to non-medical, untrained security staff members—a deputy, a lieutenant and a sergeant at the jail. *Id. at ¶¶ 39-42.* Plaintiff contends Daquentin's lack of access to any mental health professional while incarcerated at the Iberia Parish Jail shows the inadequacy of the Emerald contract with regard to mental health services and is a violation of § 15:703.

Further, Plaintiff cites jurisprudence in support of this position which recognizes that a parish can be liable for damages under federal law for failure to contract for and fund constitutionally adequate medical and mental health care. In *Roper v. Marino, et al*, No. 92-3988, 1995 WL 222185 (E.D. La. 1995) (J. Vance), while incarcerated in the St. Charles Parish Jail, the plaintiff allegedly fell and hurt his neck. The plaintiff filed a claim against St.

Charles Parish alleging his lack of medical care at the jail caused him to become paralyzed. In denying the parish's motion for summary judgment, the court examined the parish's duties under La. R.S. 15:703 and held there were "fact issues as to whether medical services and personnel were sufficient at the St. Charles Parish Jail." *Id.* at *2. In *Howard v. City of New Orleans, et al*, No. 88-2848, 1988 WL 98242 (E.D. La. 1988), the court considered a motion to dismiss the plaintiff's claims against the city under La R.S. § 15:703 in which the plaintiff alleged there was no doctor available when he needed medical care.  The court denied the motion, finding the plaintiff's allegations were sufficient to state a claim upon which relief could be granted.

Plaintiff also alleges that Iberia Parish was grossly negligent and willfully neglected its health-care obligations as to its obligation to contract for constitutionally adequate health care at the jail because it was aware that its provisions for mental health services at the jail were deficient. *R. 1, ¶¶ 27, 29.* Plaintiff cites *Howard v. City of New Orleans*, No. 88-2848, 1988 WL 98242 (E.D. La. 1988), in which the plaintiff in that case alleged a claim against the city under § 15:703 because he was not seen by a doctor when he needed medical care. The  court denied summary judgment and recognized the plaintiff's claim based on the city's knowledge that a doctor failed to attend to him. *Id.* at *1.

In the Complaint, Plaintiff alleges three instances from 2009 to 2011 in which inmates with a history of mental illness died or were injured after deputies used force to subdue them. *Id. at ¶ 35 a, b & c.*  Plaintiff contends the jail's "culture of violence and indifference to prisoner welfare" posed a particular danger to Daquentin, especially because of his young age,

mental illness and history of suicidal ideation and behavior.

The undersigned finds that the factual allegations set forth in Plaintiff's Complaint are sufficient to state a plausible claim as to whether medical services and personnel were adequate at the Iberia Parish Jail such that Daquentin's constitutional right to adequate medical and mental health care was violated under § 1983.

*Conclusion and Recommendation*

For the reasons set out above, it is the recommendation of the undersigned that the motion to dismiss filed by defendant Iberia Parish Government  [Rec. Doc. 21] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

Signed this 2nd day of February, 2016 at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**